First Case 22-1885 Fleetwood Services, LLC v. Richmond Capital Group I understand that the appellant is on submission and for the appellee we have Mr. Heskin Mr. Heskin Good morning, Your Honors I understand you're satisfied with the District Court's decision Yes, I am Okay, so if there's anything you would like to add, we're here I would, Your Honor, and I just want to thank the panel, first off, for taking up this highly important issue This is the issues that here are a matter of strong public policy of New York Usury is an issue of strong public policy dating back centuries And this is an issue that is going to greatly impact not just my client, but thousands of other victims throughout the state and throughout the country As evidenced by the New York Attorney's General and the FTC's tag-along suits that were filed immediately after we had filed the suit I would respectfully submit that the lower court's 51-page detailed opinion got it spot-on on every account, including the choice of law And the one opportunity that I would suggest to the court is There are other cases that are pending before the Southern District right now, and so there could be some guidance that would be helpful to those cases And in particular, an affirmance of the lower court decision would be plenty of guidance But in addition to that, I have a lot of these cases, and there is some confusion over the standard that should be applied When you're going through that, if you don't mind, please One of the things that I think we need to answer is whether or not the district court ever said that the contract was clear or ambiguous And if that's the case, were they expected? Was the district court expected to explain that analysis before jumping into the interpretation and adopting Fleetwood's view? Sure, I believe the district court found that it's a loan as a matter of law on its face and that it wasn't ambiguous That you could just read it by its plain terms and that it was absolutely repayable And that they had so many, there were so many protections that made it absolutely repayable that there couldn't be a dispute But the defendants presented an alternative interpretation of the agreement And the district court never explicitly stated it was unreasonable, right? So can you give me your best argument as to why their interpretation is unreasonable? Sure, because first of all, it's absolutely repayable on the face of it The bankruptcy is an event of default, plain and simple They're black and white, that is undisputed So that means that even if the business didn't fail or didn't generate the receipts It was absolutely repayable by the merchant, the guarantor, in this case Ms. Fleetwood and Mr. Fleetwood So that's a critical distinction What about the fact that the amount was capped by a certain amount, the specified purchase price? Is that a factor that is contrary to your client's position or does it fit neatly if you could explain that? Sure, so the amount that had to be paid would have resulted in you serious interest under every conceivable way And I'd just direct your honor to the Hartley v. Eagle decision Which is a New York Court of Appeals decision that dates back to 1918 And so based on the face of the agreement, it says these are the daily payments This is what we expect to receive every day, period Right, but I think it's only usurious if we find that it was a lump So my question is, what is the fact that the amount payable was capped at a certain amount, which was the specified purchase price How does that do to the analysis as to whether or not it was a loan or something else? Because all you have to do is do the straight math on the face of the agreement That you take the amount that had to be paid back by the daily payment You divide that into it and it will give you the finite term And then that will give you the interest rate, which was undisputed And they actually admit that if it's absolutely repayable, if it's a loan, then it exceeds the interest rate by a lot And the other part of it is in this agreement And there have been changes to subsequent agreements in the MCA world because of this decision That say that the reconciliation provision A is illusory here because you can't exercise it until the 18th of the month And two, this is critical, is that let's say you're early in the month And you can't make the daily payment and you have no receipts You cannot have a pause, the testimony is there, pause is an automatic default And if you can't make those payments, the confession of judgment comes in It's absolutely repayable, it accelerates everything So the reconciliation provision is illusory, it's not functional Counsel, can I just ask you, and I appreciate your saying that Your view is that there are other cases pending in the Southern District that could use our guidance But it seems common ground that the only legal issue and dispute here is whether this is a loan under New York law, right? Absolutely I think it was our most recent case on this, Adar Bayes We certified that to the New York Court of Appeals We didn't think it was all that helpful apparently to endeavor as a federal court to provide our own guidance On what we thought the proper test would be in figuring out something that's a loan So I guess I'm a little confused as to why if we're looking, in your view Whether it should be affirmed by summary order or opinion, as you would have us affirm, certainly Why would it even be appropriate for us as a federal court who, you know, we can say anything we want And tomorrow the New York Court of Appeals can say, yeah, not so much In other words, why would we be the proper body to be offering up what we think is guidance on a matter of state law? And I think the court has provided that based on another certified question by this court in Plymouth Venture And the test was answered in that case by Justice Wilson, who is now the chief judge of the New York Court of Appeals And in his dissenting opinion, he laid out that it wasn't directly on point The issue of whether or not these were loans or not was not an issue But he went out of his way to look at the agreement and made a point to say I get that. I guess I'm asking why would our court, let's assume for the sake of argument we were to agree with you On affirmance as opposed to reversal My question is why would it be particularly appropriate for us as a federal court to be doing so by a published opinion Offering what could be nothing more than persuasive guidance and could be contradicted the very next day by the New York Court of Appeals We don't have the last word on New York law. I guess that's my question I understand. I think the answers are already provided in Adar Bay. It's provided in Freitas So it's already provided. I'm not sure why you're looking for us to just give guidance If you think the answer is already out there, I don't know what the further guidance is that you're asking for If there is further guidance needed, I'm not sure why you're asking this tribunal to do that job What I would like to see is a reference saying that the clearest indication of what the New York Court of Appeals would do Is spelled out in front of that judge. That's the test There could be no clearer indication of what the New York Court of Appeals would do And it's consistent with the Second Circuit precedent It's consistent with New York Court of Appeals precedent dating back to the 1800s So all I'm looking for is just a reaffirmance of what the New York Court of Appeals precedent You started off saying that there's some ambiguity as to the standard of review And that that's what you wanted clarification from this court Can you just explain that? I don't know what you mean by that So the courts, there's a divergence right now between state courts and federal courts And in the state courts, a lot of them just say it's a three-factor test All of the federal courts that have looked at this have said absolutely not It's not a three-factor test. You have to look at the agreement as a whole You have to know one factor is dispositive And when you look at the transaction and the document as a whole That's how you determine whether or not it's a loan And I think there's five district court decisions out there already that got it spot on They said you have to look beyond it And in fact, there was a state court after reviewing those federal court decisions That I actually got to reverse himself on reconsideration I showed him Judge Lyman's decision and said, here you go, this is a better analysis And he agreed. He said, yes, these federal court decisions are much better reasoned And I am going to reverse my decision and adopt the standard that the federal courts have set out If I may, I have one more question I'm interested in hearing what you think the parties negotiated for They're both sophisticated clients. They're both sophisticated parties And the contract specifically says that it's an agreement per purchase of accounts Certainly your client knew that by calling it that versus calling it a loan There would be different legal standards that would attach to it like whether or not something was usurious So can you respond to a critique that this is an attempted windfall on the part of your client Who was negotiating presumably to their interest in the initial instance And was creating the terms by which they now no longer want to be bound Absolutely, Your Honor. And that's the entire purpose of the use-free laws Is to protect the desperate against themselves And this is a situation, no rational person, no rational reasonable person would take these terms These terms are outrageous. It's pure desperation and that's why we have laws Well, that's not really the term, right? I mean, we're not asking whether your client's rational I thought it was more public policy choice to protect people from things that the legislature has deemed predatory It may be perfectly rational if one has no other choice to take a usurious loan But regardless of the rationality of the choice, it's barred by public policy, right? I think you've said it better than I did Those are two distinct arguments, I think So the question is then is your client getting a windfall for presumably having negotiated terms in the first instance That were beneficial to them especially since they were sophisticated And not know the difference between what it means between a loan and a purchase of accounts receivable And the position you're taking now I would respectfully say no because this was a take-it-or-leave-it contract There was no negotiation. In fact, she was supposed to get more than what they gave She was supposed to get $100,000. She actually got half So that just shows you the unfair bargaining power that's here And the strong public policy is to decentivize the usurer from not doing this And so that's something that the New York State Legislature and the people of New York have held That there's got to be a penalty And even if it's a windfall, that's overcome by the public policy to deter it And there has to be a penalty because if usurers or these loan sharks go out there And not have anything on the line, hey listen, I'm going to go out there, I'm going to break legs And I'm going to go collect and confess judgment and do all these bad things And the only penalty is, oh well, I'll get back the money I paid Then that's just going to encourage it And that's why there's a steep penalty And that's why there are laws and I didn't make them That's for the legislature Okay, thank you very much. We will take the case under advisement